IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

_____

| | | |
|---|---|---|
| DAVID CANIDATE | * | |
|     Petitioner, | * | |
|         v. | * | 2:04-CV-682-VPM |
| | | (WO) |
| JAMES F. REDDOCH, JR., *et al.*, | * | |
|     Respondents. | * | |

_____

**MEMORANDUM OPINION**

**I. INTRODUCTION AND PROCEDURAL HISTORY**

David Canidate ["Canidate"], by and through counsel, filed this 28 U.S.C. § 2254 petition for habeas corpus relief on June 1, 2004.[1] Canidate is a psychiatric patient committed to the Alabama Department of Mental Health and Mental Retardation ["Department"]. He currently resides at the Taylor Hardin Secure Medical Facility ["Taylor Hardin"], located in Tuscaloosa, Alabama.

---

[1] Canidate previously filed a habeas petition with this court on September 16, 2002. *See Canidate v. Reddoch*, Civil Action No. 2:02-CV-1062-MEF (M.D. Ala.) On April 7, 2004 Canidate sought leave to amend the petition. In his proposed amended petition, Canidate expressed a desire to change the relief he sought in his original habeas application. Specifically, he stated that he no longer wished to seek his unconditional release from confinement, but rather, wished to challenge the state court's denial of his request for conditional release from Taylor Hardin to a less restrictive environment. With Canidate's approval, the court entered an Order and Recommendation which denied the request for leave to amend the petition, recommended that the petition for habeas relief be dismissed without prejudice, and directed the Clerk of Court to docket the proposed amended petition as a new application for habeas relief filed under 28 U.S.C. § 2254.

On April 10, 2003 the Department sought Canidate's conditional release by filing a *Notice of Proposal to Release with Conditions* in the Circuit Court for Montgomery County, Alabama.[2] On September 5, 2003 the state court held a hearing on the Department's request. By order dated September 26, 2003, the circuit court denied the Department's proposal. (Doc. No. 19, Vol. II, Exhs. 38, 46, 47.)

Because there is no provision under state law for appellate review of a court's denial of a motion for release, *see Alabama Department of Mental Health & Mental Retardation ex. rel. McClothan v. State*, 873 So.2d 1176, 1177 (Ala. Crim. App. 2003) (*opinion on rehearing ex mero motu*), Canidate filed the instant habeas petition seeking review of the state court's decision denying his request for conditional release. He presents the following claims for review:

1. The state court's denial of his request for conditional release was contrary to, and an unreasonable application of, federal law, and an unreasonable determination of the facts in light of the evidence presented;

2. The state court's refusal to release him conditionally from Taylor Hardin violates his Fourteenth Amendment right to due process because state law does not allow him to appeal the circuit court's decision regarding his request that

---

[2]The appropriate method for a defendant acquitted by reason of insanity to seek release from confinement is through a petition filed pursuant to Rule 25.8, Ala.R.Crim.P, filed in the circuit court that originally ordered the defendant's commitment to the custody of the Department. *See* Ala. Code § 15-16-61 (1975). Canidate was involuntarily committed to the custody of the Department by order of the Circuit Court for Montgomery County, Alabama dated August 12, 1983. (Doc. No. 19, Vol. I, Exh. 1.)

he be released from commitment; and

3. His Fourteenth Amendment right to due process is violated due to an absence of statutory authority providing regular recommitment hearings for persons committed to the Department following an adjudication of not guilty by reason of insanity ["NGRI"].

## II. DISPOSITION OF CLAIMS

In their answer, Respondents maintain that Canidate's claim regarding his movement to a less restrictive, less secure facility was properly adjudicated on the merits by the state courts. *See Williams v. Taylor*, 529 U.S. 362, 404-05 (2000). Canidate filed a response to the Respondents' answer. Upon review of the § 2254 petition, the answer of Respondents, and Canidate's response, the court concludes that no evidentiary hearing is required and that the petition shall be denied and dismissed with prejudice in accordance with the provisions of Rule 8(a), *Rules Governing Section 2254 Cases in United States District Courts*.

## III. STANDARD OF REVIEW

Canidate's request for federal habeas relief is governed by 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act. *Price v. Vincent*, 538 U.S. 634, 638 (2003) ("A habeas petitioner whose claim was adjudicated on the merits in state court is not entitled to relief in federal court unless he meets the requirements of 28 U.S.C. § 2254(d)."); *Williams*, 529 U.S. at 402. Under the requisite provisions of 28 U.S.C. §

2254(d), in order for Canidate to obtain federal habeas corpus relief with respect to a claim adjudicated on the merits in state court, he must show that the state court's decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams*, 529 U.S. at 412-413, the Supreme Court held that:

> Under the "contrary to" clause a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

The Court explained that habeas relief is appropriate when a petitioner demonstrates "that a decision by a state court is 'contrary to' . . . clearly established [Supreme Court] law if it 'applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.' *Williams v. Taylor*, 529 U.S. 362, 405-406, 120 S.Ct. 1495, 146 L.Ed. 2d 389 (2000)." *Price*, 538 U.S. at 640.

Additionally, federal review in a habeas action "is limited to whether the state court's

decision was objectively unreasonable in the light of clearly established federal law. *Williams,* [529 U.S. at 409], 120 S.Ct. at 1521." *Hawkins v. Alabama*, 318 F.3d 1302, 1310 (11th Cir. 2003); *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001), citing *Williams*, *supra* ("[F]ederal habeas relief [is] available under the 'unreasonable application' standard only if the state court's application of clearly established federal law was 'objectively unreasonable.'").  A federal district court is not to decide "the correctness *per se* . . . of the state court decision" but only the "objective reasonableness" of such decision. *Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001).  Moreover, "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams*, 529 U.S. at 410 (emphasis in original).  "Under § 2254(d)(1)'s 'unreasonable application' clause, ... a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Id*. at 411.

Federal district courts are similarly directed to determine whether the state court based its findings on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  A state court's determinations of fact shall be "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  Even when the state court addresses a question of law, however,  this court is

not authorized "to evaluate [a petitioner's] claim *de novo* rather than through the lens of § 2254(d)." *Price*, 538 U.S. at 639. The Supreme Court admonishes that a *de novo* evaluation "exceeds the limits imposed on federal habeas review by 28 U.S.C. § 2254(d) . . ." *Id*. at 636.

## IV.  DISCUSSION

### *A. Request for Conditional Release*

The essence of Canidate's first claim is that it is violation of due process to deny him a conditional release where he is not actively mentally ill and no longer dangerous to himself or others. Canidate argues that the state court's decision to deny his request for conditional relief was both contrary to, and an unreasonable application of, clearly established federal law, and specifically, *Foucha v. Louisiana*, 504 U.S. 71 (1992). In response, Respondents assert that the state court's decision to deny Canidate's request to a less restrictive, less secure facility based on his commitment history, his prior crimes, and the court's determination that he is still mentally ill and dangerous, was not an unreasonable decision.[3]

Commitment of an insanity acquittee upon proof of mental illness and dangerousness

---

[3]Canidate asserts that he is entitled to immediate release and, therefore, alternatively seeks issuance of a writ granting him an unconditional release from the Department's custody. A review of the documents and records filed in this matter show that a specific request for unconditional release was not before the circuit court for consideration at Canidate's most recent state court proceeding. (Doc. No. 19, Vol. II, Exhs. 37, 46.)

requires proof by a preponderance of the evidence.[4] *Jones v. United States*, 463 U.S. 354, 367-68 (1983). In *Foucha*, the Court repeated its holding in *Jones* that when a criminal defendant establishes by a preponderance of the evidence that he is not guilty of a crime by reason of insanity, "the Constitution permits the government, on the basis of the insanity judgment, to confine him to a mental institution until such time as he has regained his sanity or is no longer a danger to himself or society." 504 U.S. at 77-78 (quoting *Jones*, 463 U.S. at 370).

The *Foucha* Court applied *Jones* to invalidate a Louisiana statute that allowed an insanity acquittee who was no longer suffering from a mental disease but continued to be dangerous to be confined in a psychiatric facility. Because Foucha was no longer mentally ill, the Court determined that "the basis for holding [him] in a psychiatric facility as an insanity acquittee . . . disappeared." *Id*. at 78. The *Foucha* Court further determined that "even if his continued confinement were constitutionally permissible, keeping Foucha against his will in a mental institution is improper absent a determination in civil commitment proceedings of current mental illness and dangerousness." *Id*.

In Alabama, when a defendant acquitted of a criminal charge on the ground of insanity seeks to gain his or her release from the Department's custody, he must prove by a preponderance of the evidence that he is no longer mentally ill and no longer poses a danger to himself or to others. *See* Rule 25.8(f), A.R.Crim.P. Whether an insanity acquittee

---

[4]The Court's holding in *Jones* was limited to the constitutionality of the automatic initial commitment procedures at issue.

is mentally ill at the time he seeks release from confinement is strictly a medical judgment. *Powell v. Florida*, 579 F.2d 324, 332 (5th Cir. 1978). Whether a person adjudicated NGRI is dangerous at the time he seeks release from commitment involves legal and social judgments, as well as medical judgments. *Id*. at 333. Moreover, whether the acquittee has an appropriate place to go and whether he can be trusted to take his medication are relevant considerations to a determination of continued mental illness or dangerousness. *Williams v. Wallis*, 734 F.3d 1434, 1437 (11th Cir. 1984).

On September 5, 2003 at a hearing on the Department's notice for release of Canidate with conditions, the parties acknowledged their agreement of Canidate's mental health history as outlined in the State's objection to the Department's proposal to release Canidate, and specifically, that:

1. Defendant was first admitted to Bryce Hospital in June 1970[5] because of an attack on a family member and other violent behavior. Defendant escaped on January 2, 1971 and was apprehended and returned to that facility on June 11, 1971. Defendant escaped again on July 6, 1971 and was apprehended and returned to that facility on January 4, 1972.

2. Defendant was discharged from Bryce in May of 1972. After being discharged, Defendant was charged with robbery and grand larceny. He was then readmitted to Bryce in November of 1972. Defendant escaped again in May of 1973 and was apprehended and returned to the facility in October of 1973.

3. Defendant was discharged from Bryce in November of 1973.

---

[5]Canidate was 19-20 years old on his first admission to Bryce Hospital. (*See* Doc. No. 19, Vol. II, Exh. 37 - Hospital Review Board Report.)

    4.        On August 18, 1975 Defendant violently attacked a dentist. Defendant was admitted to Bryce on August 20, 1975.

    5.        Defendant escaped from Bryce on March 3, 1976. Defendant violently murdered Arthur Crozier on July 3, 1976. Defendant was readmitted to Bryce on August 20, 1976.

    6.        On May 26, 1977 Defendant was found not guilty of murder by reason of mental disease or defect by a jury. Defendant was readmitted to Bryce on June 10, 1977.

    7.        Defendant was discharged from Bryce on March 28, 1981. On May 22, 1981 Defendant murdered Felix Richardson. Defendant was readmitted to Bryce on June 22, 1981.

    8.        On August 12, 1983 Defendant was adjudicated not guilty by reason of mental disease or defect and committed to Taylor Hardin Secure Medical Facility.[6]

(Doc. No. 19, Vol. II, Exh. 39 & Exh. 46 at pg. 3.) Dr. James Hooper, the director of medical and psychiatric services at Taylor Hardin, and Darryl Gordon, recreation director at Taylor Hardin, testified at the September 5 hearing. At the end of the hearing, the court took the matter under advisement. (*Id*. at Exh. 46.)

On September 26, 2003 the state court entered an order denying the Department's

---

[6]In its August 12, 1983 order directing that the Department take custody of Canidate pursuant to Ala. Code § 15-16-43 (1975), the state court held that the evidence before it demonstrated that Canidate was a diagnosed schizophrenic, grossly psychotic, and extremely dangerous. The state court further concluded that Canidate's mental illness posed a real and present danger of substantial harm to himself and others and that he could not be released from the custody of the Department unless a hearing was held before the court to determine whether he continued at such time to pose a real and present threat of substantial harm to himself and others. (Doc. No. 19, Vol. I, Exh. 1.)

proposal seeking Canidate's conditional release. In support of its decision, the state court determined the following:

> The Department has the burden of showing by the preponderance of the evidence that Mr. Canidate is either no longer mentally ill or he is no longer a threat to himself or others. Rule 25.8(b) ARCP. Dr. Hooper, a psychatrist who is the director of the Taylor Hardin Secure Medical Facility ("THSMF"), testified that Canidate carries a diagnosis of paranoid schizophrenia. Accordingly, the contested issue is whether Canidate is a threat if released under the conditions proposed.
>
> The evidence shows that Canidate resides at THSMF. THSMF is a maximum secure medical facility - a prison that functions as a hospital. Canidate is under near-constant supervision and it is required that he be observed every fifteen minutes. He receives an injection of prolixin for his illness and the administration of the drug is monitored and charted. Although for a number of years Mr. Canidate has been very cooperative in taking his medicine, he knows that he has no choice.
>
> Dr. Hooper describes Mr. Canidate as extremely stable and a model patient. He is a good influence on the other patients and has successfully completed every treatment regimen offered at THSMF. He has been allowed to leave THSMF under the supervision of two attendants. It is the objective of THSMF to treat Mr. Canidate and to have him released. Eventually, it is hoped that he would be reintegrated into society. The first step in this process is to have him released to a less secure facility. It is the opinion of Dr. Hooper and the hospital review board that he is no longer a threat to himself or to others and that he should be released under the proposed conditions.
>
> Dr. Hooper testified that ideally Mr. Canidate would be gradually reintegrated into society by being transferred to a medium and then a minimum secure medical facility. Unfortunately, Alabama has no such facilities; the only secure medical facility is THSMF, a maximum secure facility. In the hearing, the Department exhibited confusion as to where Mr. Canidate would be housed if released. Although in its proposal, the Department suggested a group home here in Montgomery, the Department suggested at the hearing that he may be housed elsewhere. It is not clear the conditions under which he would be

housed at another facility. However, it appears from the testimony that if he is housed at somewhere other than THSMF, he will be able to come and go, at least during daylight hours after a nominal period of time.

Dr. Hooper further testified that Mr. Canidate had been asymptomatic for at least ten years. However, on cross-examination it was shown that Mr. Canidate had threatened another patient within the past five years. Dr. Hooper also testified that up to one-half of mentally ill patients, who are not confined, are non-compliant in taking medications. Finally, he noted that Mr. Canidate is a unique patient, a man who has been institutionalized for twenty-plus years on medications. Apparently given that uniqueness, Dr. Hooper testified that it would be difficult to predict how Mr. Canidate would react in a less secure environment.

It is, of course, impossible to know whether Mr. Canidate will return to his violent ways. However, the past is often the best predictor of the future. Mr. Canidate was admitted eight times between 1970 and 1980 to an unsecure facility, Bryce Hospital. He escaped from Bryce four times during that period and murdered a citizen after one escape. Typically, he escaped within six months of admission; he never waited over a year before he "eloped." He was discharged by the hospital on three occasions. According to Dr. Hooper, he could not have been discharged on any of those occasions without a medical determination that he was no longer a threat to himself or others. Yet, each time he was discharged, he apparently quit taking his medications and committed a violent crime, the last an unprovoked homicide of another innocent.

While [Mr. Canidate] appears stable and in remission, it is also accurate that he has achieved that status for a sustained period of time only while in a secured facility, under constant observation, when forced to take his medication. Mr. Canidate has been a spectacular failure when placed in unsecured facilities. As noted by the hospital review board; "if he were to stop taking his medication or use alcohol or drugs, his risk for psychiatric decompensation and further legal involvement would probably be high."

The Department concedes that [Mr. Canidate] occupies a unique status and the Department does not know how he will react in an unsecured environment. The Department also acknowledges that placing him in an unsecured facility

>is not the recommended course of action but it is the only alternative to THSMF. Given Mr. Canidate's history of non-compliance in taking his medications, his history of deadly attacks when not in a secured facility, and the other testimony, the Court finds that there is a real risk to the public if he is released from a secured facility. *Carlisle v. State*, 512 So.2d, 150, 158 (Ala.Cr.App. 1987).

(Doc. No. 19, Vol. II, Exhs. 46, 47.)

Based on the totality of the state court's decision, the court finds that the decision to deny Canidate's request for conditional release was neither contrary to, nor an unreasonable application of, clearly established federal law. The general rule to be taken from *Foucha* is that an insanity acquittee may be held for only as long as he is mentally ill. Reliance on his dangerous propensities alone do not justify continued confinement. *See United States v. Wattleton*, 296 F.3d 1184, 1202 n.35 (11th Cir. 2002). In this case, the state court's decision to deny Canidate's proposal for conditional release was neither contrary to nor an unreasonable application of this rule because there is no dispute that Canidate suffers from schizophrenia, paranoid type, albeit in remission.[7]

Canidate also challenges the state court's determination that he remains a danger to himself or others asserting that this decision was both wrong and unreasonable. As noted

---

[7]In *Foucha* the state conceded that it was confining someone who was not actually mentally ill. *Id*. 504 U.S. at 78-79. Canidate's invocation of *Foucha* rests on his assertion that he is not actively mentally ill. This assertion is somewhat disingenous as the testimony of Canidate's treating psychiatrist indicates he currently carries a diagnosis of paranoid schizophrenia which has been in remission during the time he has been in a secured facility, under constant observation and supervision, and where he has no choice but to be medicated for his illness.

herein, whether a defendant acquitted by reason of insanity is dangerous at the time he seeks release from commitment involves legal and social judgments as well as medical judgment. *Powell*, 579 F.3d at 332. In *Powell*, the court stated in a footnote:

> The basis for commitment of an individual acquitted by reason of insanity is his "dangerousness" to society. In determining the existence of that dangerousness a court should focus upon the patient's behavior and must predict whether that behavior demonstrates that the patient, if released, would pose a substantial threat of harm to himself or others. While an initial commitment of an acquittee may well focus upon the crime committed, the release of an individual committed by reason of insanity more properly looks to that individual's behavior since the crime to determine whether or not his recent behavior demonstrates his continuing dangerousness.

*Id*. at 333 n.10.

A review of the evidentiary material filed in this matter shows that there was no challenge to the state court's findings as they related to the nature of Canidate's underlying crimes or the causal connection between his mental illness and his underlying crimes and other violent behavior. In its decision denying Canidate's request for conditional release, the state court clearly acknowledged testimony presented at the hearing that Canidate is stable and in remission and has been so for a sustained period of time, that he has successfully completed every treatment regimen offered at Taylor Hardin, that he has been allowed to leave Taylor Hardin under the supervision of at least two attendants and does well on these community outings, and that in the opinions of Dr. Hooper and the hospital review board, Canidate is no longer a threat to himself or others.

The state court's opinion also noted, however, the following salient factors:

- In Canidate's current environment, he is in a secured facility, he is under round-the-clock supervision and observed every 15 minutes;

- He remains on a regimen of injectable medication which is always administered by hospital personnel and always monitored and charted;

- He has no choice but to take the medication in his current environment;[8]

- He may leave the premises of Taylor Hardin only under supervision, that he verbally threatened another patient within the last five years; and

- He has been in an institutionalized setting on medication for more than twenty years. (Doc. No. 19, Vol. II, Exh. 46.)

In arriving at its decision to deny Canidate's proposal for conditional release, the state court also considered Taylor Hardin's objective in treating Canidate for the purpose of reintegrating him into society and their desire to achieve that goal in gradual measures by ideally transferring him to a medium and then a minimum secure medical facility. In addition to noting that no such facilities exist in Alabama, the state court's decision aptly noted the Department's inability to identify the facility where Canidate would be housed if released from Taylor Hardin and the conditions under which he would be housed.[9] Finally, the state

---

[8] Non-compliance with his medication would result in Canidate being force medicated. (Doc. No. 19, Vol. II, Exh. 46 at pg. 31.)

[9] In its April 8, 2003 *Notice of Proposal to Release with Conditions*, the Department sought Canidate's release and discharge from its custody to live at the Montgomery Therapeutic Group Home, a residential facility operated by the Montgomery Area Mental Health Authority. The Notice further indicated that in the opinion of the professionals at the Department, Canidate

court noted that, while it was impossible to know whether Canidate would return to his violent propensities, the record before it reflected that 1) Canidate had been a "spectacular failure" in unsecured settings as shown by his failure to be compliant in taking medication

---

no longer posed a real and present threat of substantial harm to himself or others by being discharged from the Department's custody if certain conditions were imposed upon Canidate's release from custody. (Doc. No. 19, Vol. II, Exh. 37.)

At the close of the September 5, 2003 hearing, counsel for the Department informed the court that there had been a change in circumstances since filing Canidate's petition wherein it had been recommended that he go to the Montgomery Therapeutic Group Home. Specifically, counsel indicated that if the state court was inclined to step Canidate down, that it be done either at the Department's Thomasville facility or at another therapeutic group home similar to the Montgomery Therapeutic Group Home with the kinds of restrictions that were available there, *i.e.*, that for at least two weeks Canidate have somebody present with him around the clock and then have him treated like anybody else in the group home meaning that he would be under no restrictions. (Doc. No. 19, Vol. II, Exh. 46 at pgs. 75-77.) The Department was not able to specifically advise the court at the hearing of where exactly they wanted Canidate to go, the restrictions he would be under and for how long, and the environment in which would be placed. Although counsel for the Department stated that it was his recommendation at that moment to step Canidate down to the Thomasville facility, Dr. Hooper testified that there was a move to shut the Thomasville Hospital and move it to the Searcy campus in Mobile, Alabama, a non-secure civil hospital similar to Bryce. (*Id*. at pgs. 72-73, 80-81.)

In a letter dated September 19, 2003 counsel for the Department informed the court:

> . . . this is the revised draft order for transfer, grounds privileges and supervised community visits for Mr. Canidate. As indicated, we propose that his transfer be to this department's Thomasville Mental Health Rehabilitation Center which will be relocated to Mobile County on the grounds of Searcy Hospital after the first week of October, 2003.

(Doc. No. 2, Exh. B.)       The letter did not indicate when the re-located Thomasville facility would actually be opened and fully operational following its move to the Searcy campus. The letter also failed to specifically advise the court as to whether the re-located facility would agree to and/or be able to comply with and/or accommodate the specific terms, conditions, and restrictions delineated in the Department's proposed order for conditional release which the Department clearly felt was a necessary part of any reintegration/step-down plan for Canidate. (*Id*.)

and his commission of violent and deadly acts, 2) the Department was unaware of how he would react in an unsecured environment, 3) the Department believed that placing him in an unsecured environment was not a recommended course of action, 4) if he was housed at some place other than Taylor Hardin his movement during the day would be unrestricted after a short period of time, and 5) the hospital review board found that if he stopped taking his medication or used alcohol or drugs, "his risk for psychiatric decompensation and further legal involvement would probably be high."  (Doc. No. 19, Vol. II, Exh. 46.)

The state court's decision to deny Canidate's proposal for conditional release reflects its determination that Canidate failed to meet his burden of proving by a preponderance of the evidence that he no longer posed a danger to himself or others. In reaching this conclusion, the state court considered the records of Canidate's lengthy history of commitment as well as the testimony presented at the September 5, 2003 hearing. As shown in its opinion, the state court considered several factors in making its decision including, but not limited to, Canidate's current mental state, his dangerousness, whether he had satisfactory placement plan in place, and whether he could be trusted to take his medication. *See Williams*, 734 F.2d at 1437-38 n.4 ("[R]elease criteria . . such as whether there is an appropriate place for the acquittee to go and whether the acquittee can be trusted to take his or her medication, are relevant to a determination of continued mental illness or dangerousness.

For example, if an acquittee is no longer dangerous only because he or she is on

medication or in a structured environment, then clearly whether he or she will take his or her medication or be in a structured environment after release can and should be considered prior to release."). As observed by the court in *Williams*, '[r]eleasing someone who has been proven dangerous, when it has not been proven that he has recovered, poses a real threat of danger to society. On the other hand, the consequences of continued confinement for the individual, although a serious deprivation of liberty, are ameliorated by some countervailing factors. He will benefit from the continued treatment he will receive, and he will be released as soon as the hospital's trained medical professionals consider that he is no longer mentally ill or dangerous, or as soon as he can prove the same in a habeas corpus proceeding." *Id*. at 1440.

In this case, however, the court concludes that the state court did not decide Canidate's petition "differently than [the Supreme] Court has [in a case based] on a set of materially indistinguishable facts" nor did the state court apply a rule that contradicts governing federal law. *Williams* 362. U.S. at 412. Consequently, the state court's rejection of Canidate's request for conditional release was not contrary to actual Supreme Court decisions. Moreover, the evidentiary material submitted in this case establishes that the state court's decision to deny Canidate's proposal for conditional release was objectively reasonable. The decision issued by the state court similarly constituted a reasonable determination of the facts in light of the parties' evidence. Canidate is, therefore, due no relief from this court on his claim for habeas relief.

## B. *The Due Process Claims*

Canidate contends that he has been denied due process because: 1) state law does not allow him to appeal a state circuit court's decision regarding a request for release from commitment, and 2) there are no state law provisions for regular recommitment hearings for persons committed to the Department following an adjudication of NGRI. A review of the pleadings and documents filed in this matter show that Canidate did not present these particular claims during his state court proceedings. It is a cardinal principle of federal habeas corpus law that a habeas claim must have been fairly presented to, *i.e.*, "exhausted" in, the state courts before the claim reaches a federal district court in a habeas corpus petition.[10] *See Rose v. Lundy*, 455 U.S. 509 (1982).

The exhaustion doctrine set forth in 28 U.S.C. § 2254 requires that the state courts be given the initial opportunity to address and, if necessary, correct alleged deprivations of federal constitutional rights in state cases. *Castille v. Peoples,* 489 U.S. 346, 349 (1989). The doctrine serves "to protect the state courts role in the enforcement of federal law and prevent disruption of state judicial proceedings." *Rose*, 455 U.S. at 518. To have exhausted his state remedies, a habeas petitioner must have fairly presented the substance of his federal constitutional claims to the state courts. *Nobles v. Johnson,* 127 F.3d 409, 420 (5th Cir.1997). This requires that any federal constitutional claim presented to the state courts be supported

---

[10] Because Canidate may periodically petition the state court for his release from the Department's custody, he is free to present his due process claims in a future state petition for habeas corpus relief. The state court's decision may then be reviewed by a federal court under the provisions of 28 U.S.C. § 2254.

by the same factual allegations and legal theories upon which the petitioner bases his federal claims. *Picard v. Connor,* 404 U.S. 270, 276 (1971).

Notwithstanding Canidate's failure to exhaust these due process claims, a federal court may entertain an application for a writ of habeas corpus only on the ground that the petitioner is in custody in violation of the constitution or laws or treaties of the United States. 28 U.S.C. § 2254. Demonstration of a violation of the constitution is necessary before a federal court may entertain a petition for writ of habeas corpus. *Clarke v. State of Florida,* 648 F. Supp. 307 (S.D.Fla.1986). A federal court is not concerned with violations of state law unless the violation raises federal constitutional problems. *Wilcox v. Ford,* 813 F.2d 1140, 1145 n. 7 (11th Cir.1987). A state's interpretation of its own laws and rules provides no basis for federal habeas corpus relief. *Beverly v. Jones,* 854 F.2d 412 (11th Cir.1988).

Canidate's argument that he is denied due process by the State of Alabama's failure to provide for appellate review of his state court proceedings fails to implicate the Constitution. There is no constitutional right to an appeal granted in either the United States Constitution or the Alabama Constitution. *See Abney v. United States*, 431 U.S. 651 (1977); *McKane v. Durston*, 153 U.S. 684 (1894); *McClothan*, 873 So.2d at 1177. Nor is the absence of a state law providing Canidate with regular recommitment hearings a basis for federal, constitutional habeas corpus relief. Because these claims do not raise any basis for federal review, they do not merit habeas relief.

## V. CONCLUSION

Accordingly, it is hereby

ORDERED that the petition for habeas corpus relief filed by David Canidate is DENIED, and this case is DISMISSED with prejudice.

A separate judgment has been entered.

Done this 25th day of August 2006.

/s/ Vanzetta Penn McPherson
VANZETTA PENN MCPHERSON
UNITED STATES MAGISTRATE JUDGE